**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Jovanni Guiseppe Whyte-Bey,<br><br>                            Plaintiff,<br><br>-v-<br><br>Santander Consumer USA, Inc.,<br><br>                            Defendant. | 2:24-cv-7104<br>(NJC) (SIL) |

**OPINION AND ORDER**

NUSRAT J. CHOUDHURY, District Judge:

Plaintiff Jovanni Giuseppe Whyte-Bey commenced this action, proceeding pro se, on October 9, 2024, and filed an Amended Complaint on April 15, 2025. (Compl., ECF No. 1; Am. Compl., ECF No. 18.) The Amended Complaint brings claims against Santander Consumer USA, Inc. ("Santander") for alleged violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), the National Bank Act, 12 U.S.C. §§ 85, 86 ("NBA"), the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), the Federal Truth in Lending Act of 1968, 15 U.S.C. § 1601 *et seq.* ("TILA"), the Fair Credit Billing Act, 15 U.S.C. § 1666 *et seq.* ("FCBA"), and pursuant to New York common law for slander of title. (*See* Am. Compl.) Whyte-Bey seeks compensatory and punitive damages, as well as injunctive and declaratory relief for Santander's alleged failure to investigate and correct inaccurate billing and credit reporting with respect to financing that Whyte-Bey obtained to purchase a used automobile. (*See id.*)

Before the Court is Santander's Motion to Dismiss the Complaint ("Motion") for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.

1

P."). (*See* Mot., ECF No. 21-1.) For the following reasons, the Court grants the Motion and dismisses the Amended Complaint in its entirety.[1]

## FACTUAL BACKGROUND

The following facts are taken from the Amended Complaint.[2] (Am. Compl.)

On or around June 17, 2024, Whyte-Bey entered a retail installment contract (the "Contract") for the purchase of a pre-owned 2018 Honda CR-V automobile (the "Vehicle") from non-party South Shore Mitsubishi ("Mitsubishi") located at 185 East Sunrise Highway in Freeport, New York. (*See* Am. Compl. ¶ 36; *see* Exs. A, B ("Contract"), ECF No. 18-1 at 1–8.)[3] The Contract and the invoice both reference Santander, a financial service corporation located in Texas, as the assignee of Mitsubishi's interest in the Contract.[4] (Am. Compl. ¶¶ 21, 23; Contract at 8; *see also* Ex. I ("Invoice"), ECF No. 18-1 at 24.)

The purchase price of the Vehicle was $21,414.75 plus taxes and fees. (Contract at 3.) According to the terms of the Contract, Whyte-Bey made a down payment of $1,000 and financed the outstanding $23,601.75 balance at an annual percentage rate of 19.51% (the

---

[1] In light of this Court's dismissal, Whyte-Bey's pending motion "to expedite the proceedings with motion to compel discovery and for injunctive relief and summary judgment" is dismissed as moot. (ECF No. 26.) For the same reason, Whyte-Bey's "Affidavit Notice of Billing Error," to the extent it seeks any relief, is also dismissed as moot. (ECF No. 28.)

[2] On a Rule 12(b)(6) motion to dismiss, a court may consider "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, matters of which judicial notice may be taken, [and] documents not expressly incorporated by reference in the complaint that are nevertheless 'integral' to the complaint." *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023).

[3] ECF No. 18-1 contains several different exhibits labeled by letters. For ease of reference, the Court will reference the exhibits in accordance with their electronic filing pagination.

[4] Santander is not a signatory to the Contract, but pursuant to the Contract's terms, Mitsubishi, as the seller, assigned its interest in the Contract to Santander. (*See* Contract at 2, 8.)

"Loan"), resulting in a total purchase price of $41,548.96. (Am. Compl. ¶ 4; Contract at 2; Invoice at 23–25.) Whyte-Bey was required to pay seventy-two monthly payments of $563.18 to Santander beginning on August 1, 2024. (Contract at 2.)

Shortly after his purchase of the Vehicle, in correspondence with Santander, Whyte-Bey disputed the amount owed. (Am. Compl. ¶ 17.) For instance, in a June 26, 2024 notice, Whyte-Bey informed Santander that he would be "seeking remittance in the form of an acquisition and for assessment of the tax issue associated with INVOICE and for cancellation of the debt with INTERNAL REVENUE." (*See* Am. Compl. ¶ 37; Ex. J, ECF No. 18-1 at 27–36.) According to Whyte-Bey, Santander never responded to this notice. (Am. Compl. ¶ 38.)

In a July 15, 2024 letter to Santander, Whyte-Bey returned the remittance coupon for his $563.18 bill due on August 1, 2024 along with a United States Postal Service money order in the amount of $1.00 in "good faith" as a payoff of the full amount of his $23,727.72 debt. (ECF No. 18-1 at 90–91.) The letter informed Santander that if the remittance of payment is declined then "a [b]illing error will immediately be incepted as of the date of refusal." (*Id.* at 92.) The letter further provides:

> Santander [] is prohibited from issuing any adverse credit reports based upon failure to pay such disputed amount during the billing error resolution process; [c]losure of [his] account by Santander [] is prohibited based upon a good faith assertion of a billing error; and, Santander [] must contact [Whyte-Bey] within a reasonable amount of time to acknowledge that any payment was refused or declined, the reasons therefore, and also to acknowledge a claim of a billing error has been incepted . . . .

*Id*. In its July 15, 2024 response, Santander informed Whyte-Bey that it had reviewed his account and determined that the assertions made in his correspondence are invalid. (*Id.* at 82 ("If you believe there is an issue with the servicing of the account, please provide specific details or documentation so that we may address any legitimate concerns.").)

3

On or around July 17, 2024, Whyte-Bey requested that Santander complete IRS Form 1099-C for cancellation of his debt. (*Id.* at 41–45.) Whyte Bey also warned Santander of the following: (1) that it could not attempt to collect the $23,916.27 in dispute "until resolution of the billing error"; (2) that Santander "is prohibited from issuing any adverse credit report based upon failure to pay such disputed amount"; (3) that Santander could not close Whyte-Bey's account based on his "good faith assertion of a billing error"; and (4) that Santander "must contact [Whyte-Bey] with[in] a reasonable amount of time to acknowledge that any payment was refused or declined, the reasons therefore, and also to acknowledge a claim of a billing error." (*Id.* at 44.) He included a copy of a postal money order dated July 6, 2024 in the amount of $1.00 as proof that he had discharged his $23,752.72 debt "without recourse." (*Id.* at 47.)

In a July 24, 2024 document to Santander titled "Notice of Fault and Opportunity to Cure," Whyte-Bey claimed that "the account in question is paid in advance" and demanded that Santander correct the billing errors. (*Id.* at 77–78 ("I believe we have a case of mistaken identity.").)

In a September 13, 2024 document to Santander titled "Pronouncement of Forfeit," Whyte-Bey claims that Santander forfeited any claims it may have against him for its failure "to show/prove that the account was not paid in advance." (*Id.* at 85.)

According to the Amended Complaint, Whyte-Bey sent Santander additional notices to cure on or around October 3, 2024, as well as a final notice of default and an affidavit of satisfaction with respect to his Loan. (Am. Compl. ¶¶ 40–41; ECF No. 18-1 at 64–68.)

On or around December 24, 2024, Santander sent Whyte-Bey a "NOTICE OF RIGHT TO CURE DEFAULT" informing him that he was sixty days late in his scheduled monthly payment, and that he had until January 8, 2025 to cure by paying the amount due of $1,182.66.

4

(Am. Compl. ¶ 11; ECF No. 18-1 at 107–08.) According to the Amended Complaint, on December 31, 2024, the same day he received Santander's notice of default, Santander falsely reported to the credit reporting agencies that Whyte-Bey's account was sixty days late. (Am. Compl. ¶¶ 14, 43; ECF No. 18-1 at 102–03.)

The Amended Complaint alleges that Santander diverted his payment options by having him removed from the online payment system thereby causing him to be improperly reported as delinquent. (Am. Compl. ¶¶ 12, 42.) It alleges that this was done in retaliation for Whyte-Bey's filing of the instant action but claims that he continued to make payments of unspecified amounts on his Loan via United States Postal Service money orders. (*Id.* ¶¶ 13, 42.) Whyte-Bey paid $1,182.66 "under protest" on December 30, 2024. (ECF No. 18-1 at 110.)

On January 11, 2025, "[Whyte-Bey] filed a consumer complaint with credit reporting agencies providing proof of service and proof of claim that [Santander] submitted a summarily false reporting to the agencies." (Am. Compl. ¶ 44.) The Consumer Dispute Complaint is addressed to Santander and lists three consumer credit reporting agencies as carbon copy recipients. (ECF No. 18-1 at 102–04.)

On February 25, 2025, Santander sent Whyte-Bey another "NOTICE OF RIGHT TO CURE DEFAULT" stating that he owed $1,154.51 due by March 12, 2025. (*Id.* at 112.)

On or around April 4, 2025, Whyte-Bey filed another consumer complaint against Santander. This "Notice of Double Billing to Induce Default," is addressed to Santander and lists three consumer credit reporting agencies as carbon copy recipients. (Am. Compl. ¶¶ 16, 45; ECF No. 18-1 at 98–100.) The consumer complaint alleges that Santander denied Whyte-Bey access to making payments online or in paper and "report[ed] misleading information to credit information reporting agencies and bureaus for the purpose of inducing default and repossession

of already paid item." (ECF No. 18-1 at 98–100.) It also asserts that Whyte-Bey made a phone payment on April 2, 2025 for which he was double billed and that he plans to file a complaint with the Consumer Financial Protection Bureau as well as the Better Business Bureau. (*Id.* at 98–99.) Whyte-Bey provided Santander with the April 4, 2025 consumer complaint along with an incident report filed with the Suffolk County Police Department. (Am. Compl. ¶¶ 16, 45.)[5]

## PROCEDURAL HISTORY

On October 9, 2024, Whyte-Bey initiated the instant action by filing a Complaint against Santander. (Compl., ECF No. 1.) On March 5, 2025, Santander filed a letter motion requesting leave to file a motion to dismiss for improper service and for failure to state a claim. (ECF No. 15.) On March 10, 2025, the Court granted Santander leave to file a motion to dismiss. (Elec. Order, Mar. 10, 2025.) Santander filed its motion to dismiss the Complaint pursuant to Federal Rule 12(b)(6) on March 26, 2025. (ECF No. 16.) In response to Santander's motion, on April 15, 2025, Whyte-Bey filed an Amended Complaint. (ECF No. 18.) The Amended Complaint contains nearly identical factual allegations as the original Complaint and also seeks compensatory, injunctive, and declaratory relief. (*See* Am. Compl.)

On May 20, 2025, Santander filed the instant Motion pursuant to Rule 12(b)(6). (Mot., ECF No. 21.) On June 10, 2025, Whyte-Bey filed an opposition to the Motion, including a Motion to Strike Santander's Motion. (Opp'n Mot. Dismiss ("Opp'n"), ECF No. 22.) By Orders dated June 12, 2025 and June 21, 2025, respectively, the Court denied Whyte-Bey's Motion to Strike. (*See* Elec. Orders, June 12, 2025 and June 21, 2025.) Santander filed a reply in further support of its Motion on June 24, 2025. (Reply Supp. Mot. Dismiss ("Reply"), ECF No. 24.)

---

[5] The Amended Complaint cites a police incident report, but the report itself is not included in the exhibits attached to the Amended Complaint.

**LEGAL STANDARDS**

To avoid dismissal under Rule 12(b)(6), a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Cardinal Motors, Inc. v. H&H Sports Protection USA Inc.*, 128 F.4th 112, 120 (2d Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In determining whether a claim is sufficiently plausible to withstand dismissal under Rule 12(b)(6), a court "accept[s] all factual allegations in the complaint as true" and "draw[s] all reasonable inferences in the plaintiff's favor." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Schiebel v. Schoharie Central School Dist.*, 120 F.4th 1082, 1106 (2d Cir. 2024). While "detailed factual allegations" are not required, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

Generally speaking, the court is required to construe pleadings "filed by pro se litigants liberally and [to] interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023).[6] "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v.*

---

[6] Unless otherwise indicated, referenced quotations omit all internal quotation marks, citations, footnotes, and alterations.

*Deacon*, 916 F.3d 208, 213 (2d Cir. 2019). Nevertheless, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Lomax v. Aegis Funding Corp.*, No. 09-cv-2321, 2010 WL 1633440, at *2 (E.D.N.Y. Apr. 19, 2010); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam).

**DISCUSSION**

Santander moves to dismiss the Amended Complaint with prejudice pursuant to Rule 12(b)(6) for failure to bring any plausible claims. It contends that the essence of the Amended Complaint is that because Whyte-Bey sent a notice to Santander that he disputed his debt, he should no longer have to repay the financing he obtained to purchase the Vehicle. (Mot. at 2.) Additionally, Santander argues that despite being afforded the opportunity to amend his original Complaint following notice of its specific deficiencies, Whyte-Bey's Amended Complaint fails to plead plausible claims. (*Id.* at 1.)

Whyte-Bey's opposition to the Motion does not address Santander's substantive arguments related to his claims, but instead attempts to add claims of fraud, breach of contract, misrepresentation, and invalid assignment of the Loan. (*See* Opp'n. at 8.) However, a plaintiff may not amend a complaint through motion papers. *Burbar v. Inc. Vill. of Garden City*, 961 F. Supp. 2d 462, 470 (E.D.N.Y. 2013) (collecting cases); *accord Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (recognizing that a party is not entitled to amend its complaint through statements made in motion papers). Therefore, the Court will not consider these newly raised allegations.

Assuming the truth of the Amended Complaint's factual allegations and testing only their legal sufficiency, the Court grants Santander's Motion for the reasons discussed below.

8

## I.    Fair Credit Reporting Act Claim

The Fair Credit Reporting Act regulates the conduct of consumer reporting agencies, users of consumer reports, and entities that furnish information to consumer reporting agencies. *See Redhead v. Winston & Winston, P.C.*, No. 01-cv-11475, 2002 WL 31106934, at *3 (S.D.N.Y. Sept. 20, 2002) (citing 15 U.S.C. § 1681, et seq.). "Section 1681s-2 of the FCRA sets forth an information furnisher's responsibilities under the FCRA, delineating two separate categories of duties." *Sprague v. Salisbury Bank & Tr. Co.*, 969 F.3d 95, 98 (2d Cir. 2020). Those two categories are set forth in Sections 1681s-2(a) and 1681s-2(b). *Id.* at 98–99.

"Section 1681s-2(a) details a furnisher's responsibility to provide accurate information, including a duty to refrain from knowingly reporting inaccurate information, and to correct information discovered to be inaccurate." *Id.* However, Section 1681s-2 expressly limits the enforcement of obligations under Section 1681s-2(a) to government agencies or officials. *See* 15 U.S.C. § 1681s-2(d). Accordingly, the Second Circuit has held that "there is no private [cause] of action for violations of Section 1681s-2(a)." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012); *see also Sprague*, 969 F.3d at 98–99.

Section 1681s-2(b), on the other hand, does provide a private right of action. "Section 1681s-2(b) outlines a furnisher's duties following a dispute regarding the completeness or accuracy of a consumer's credit report." *Sprague*, 969 F.3d at 99. These duties are triggered once a furnisher "receiv[es] notice" of a dispute. *Id.*; 15 U.S.C. § 1681s-2(b)(1). However, "[t]he statute is clear that the notice triggering these duties must come from a [credit reporting agency], not the consumer." *Sprague*, 969 F.3d at 99; *see also Comunale v. Home Depot, U.S.A., Inc.*, 328 F. Supp. 3d 70, 77–78 (W.D.N.Y. 2018) (Section 1681s-2(b) "governs the furnishers' duty once notice is received *from a credit reporting agency* that there is a dispute as to the completeness or

9

accuracy of the information provided to that reporting agency." (emphasis in original) (quoting

*Redhead*, 2002 WL 31106934, at *4)). Once a credit reporting agency has notified a furnisher

about a dispute as to the accuracy of information, the furnisher must conduct an investigation and

report the results to the agency. *Matheson v. Ocwen Federal Bank FSB*, No. 1:05-cv-02747, 2008

WL 11413560, at *7 (E.D.N.Y. June 18, 2008). Significantly, under § 1681s-2(b), a furnisher is

*only* required to conduct an investigation concerning the disputed information following the

receipt of notice from a credit reporting agency. *See* 15 U.S.C.§ 1681s-2(b)(1); *see also Sprague*,

969 F.3d at 99 ("Section 1681s-2(b) is not implicated simply because a consumer contacts a

furnisher . . . regarding inaccuracies in her credit report."); *Dickman v. Verizon Commc'ns, Inc.*,

876 F. Supp. 2d 166, 172 (E.D.N.Y. 2012) ("[U]nder § 1681s-2(b), [a] defendant ha[s] no duty to

investigate [a] credit dispute unless defendant received notice of the dispute from a consumer

reporting agency."). Thus, "[t]o state a claim [under § 1681s-2(b)(1)], a consumer must show that

(1) a furnisher received notice of a credit dispute from a [credit reporting agency] (as opposed to

from the consumer alone) and (2) the furnisher negligently or willfully failed to conduct a

reasonable investigation." *Ngambo v. Chase*, No. 20-cv-2224, 2020 WL 1940553, at *3

(S.D.N.Y. Apr. 22, 2020). "The cornerstone of a claim under 15 U.S.C. § 1681s-2(b) is that the

subject information was inaccurate; if the information was not inaccurate, there can be no FCRA

violation." *Tescher v. Experian Info. Sols., Inc.*, No. 21-cv-02266, 2022 WL 564048, at *6

(S.D.N.Y. Feb. 23, 2022).

The Amended Complaint seeks to plead an FCRA claim by asserting that Whyte-Bey

informed Santander that "reports associated with his personal credit were 'technically accurate,'

but 'misleading,'" and that "the procedures used by [Santander] which resulted in the inaccuracy

were 'unreasonable.'" (Am. Compl. ¶ 82.) It further alleges that "a consumer dispute complaint

10

was initiated against [Santander] and a request [was made] to remove the false reporting with [consumer reporting] agencies," and that "Defendant knowingly and willingly failed to properly reinvestigate or to correct inaccurate reporting following a final notice sent to defendant's offices . . . ." (*Id.* ¶¶ 7, 15.)

Santander contends that the Amended Complaint, like the original Complaint, fails to allege sufficient facts to state an FCRA claim. (Mot. at 4.) The Court agrees.

Critically, in the instant case, the Amended Complaint fails to allege that Santander received notice of a credit dispute *from a credit reporting agency*. Rather, the Amended Complaint alleges that Santander—the furnisher of information—received notice of a credit dispute directly from Whyte-Bey—the consumer. (*See* Am. Compl. ¶¶ 7, 82 (citing notices sent by Whyte-Bey).) Such allegations are insufficient to support a Section 1681s-2(b) claim. *See Sprague*, 969 F.3d at 99; *see also*, *Markovskaya v. Am. Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 344 (E.D.N.Y. 2012) ("Where a consumer shows only that the furnisher received notice of the dispute from the consumer, but not from a credit reporting agency, no claim is stated." (collecting cases)).[7] Accordingly, the FCRA claim is dismissed under Rule 12(b)(6).

## II.    National Bank Act Claim

The National Bank Act permits national banks to "charge on any loan . . . interest at the rate allowed by the laws of the State, Territory, or District where the bank is located." 12 U.S.C. § 85; *see also Marquette Nat. Bank of Minneapolis v. First of Omaha Serv. Corp.*, 439 U.S. 299,

---

[7] Furthermore, the consumer disputes that Whyte-Bey allegedly sent to Santander and three credit reporting agencies post-date the filing of the instant action on October 9, 2024 and therefore cannot support his FCRA claim. (*See* April 4, 2025 "Notice of Double Billing," ECF No. 18-1 at 98–100; January 11, 2025 "Consumer Dispute Complaint," ECF No. 18-1 at 102–03.) Nonetheless, even if these consumer disputes pre-dated the filing of the instant action, they are insufficient to support an FCRA claim as they fail to demonstrate that a credit reporting agency notified Santander of a dispute over Whyte-Bey's credit.

318 (1978) (finding that the NBA authorized a national bank based in one state to charge its out-of-state credit card customers a higher interest rate on unpaid balances allowed by its home state). Notably, Sections 85 and 86 of the NBA "provide the exclusive cause of action" for usury claims against national banks, *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 11 (2003), and "therefore completely preempt analogous state-law usury claims." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 275 (2d Cir. 2005). Thus, there is "no such thing as a state-law claim of usury against a national bank." *Beneficial*, 539 U.S. at 11; *see also Pac. Capital Bank N.A. v. Connecticut*, 542 F.3d 341, 352 (2d Cir. 2008) ("[A] state in which a national bank makes a loan may not permissibly require the bank to charge an interest rate lower than that allowed by its home state.").

Whyte-Bey claims that Santander, a national bank chartered in Texas, violated the federal usuary law by charging an interest rate of 19.5% on his Loan, which is greater than New York's maximum interest rate of 16%. (Am. Compl. ¶¶ 86–89.) Whyte-Bey's contention is misplaced.

Here, the Amended Complaint alleges that "[t]hough [Santander] is a bank charted in the location of the State of Texas it was running a foreign operation in the State of New York where the plaintiff resides," and thereby the New York usury law capping interest rates at 16% applies to the Loan. (Am. Compl. ¶¶ 87–89.) However, according to the allegations of the Amended Complaint, as well as the NBA, Santander—a national bank located in Texas—may extend credit to consumers as Texas law allows and without regard to New York law (Whyte-Bey's place of residence). (*See* Am. Compl. ¶¶ 21–23, 90 (acknowledging that the NBA "permits an 'association' . . . to 'charge on any loan . . . interest at a rate allowed by the laws of the State, Territory, or District where the bank is located . . .'"); *Sullivan*, 424 F.3d at 275; s*ee also Llewellyn v. Asset Acceptance, LLC*, 669 Fed. App'x. 66, 68 (2d Cir. 2016) (summary order)

12

("Citibank N.A. is located in South Dakota, and so New York usury law does not apply" under the NBA); *Madden v. Midland Funding, LLC*, 786 F.3d 246, 250 (2d Cir. 2015) ("Accordingly, because FIA is incorporated in Delaware, which permits banks to charge interest rates that would be usurious under New York law, FIA's collection at those rates in New York does not violate the NBA and is not subject to New York's stricter usury laws, which the NBA preempts.").

Accordingly, the NBA allows Santander to charge Whyte-Bey interest on the Loan at a rate in accordance with Texas law, notwithstanding New York's usury law, which caps interest rates at 16%. As the Complaint does not allege that Santander's interest rate is usurious under Texas law, it fails to plead a plausible NBA claim, and this claim is dismissed under Rule 12(b)(6).

## III.    Fair Debt Collection Practices Act Claim

The Fair Debt Collection Practices Act was enacted "to eliminate abusive debt collection practices by debt collectors[.]" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015) (citing 15 U.S.C. § 1692e). To establish a violation under the FDCPA, "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." *Wilkins v. Specialized Loan Servicing, LLC*, 623 F. Supp. 3d 264, 270 (S.D.N.Y. 2022); *see also* 15 U.S.C. § 1692e.

The FDCPA distinguishes between debt collectors and creditors. Specifically, the FDCPA "only prohibits deceptive and misleading practices by 'debt collectors.'" *Estes v. Toyota Fin. Serv.*, No. 14-cv-1300, 2015 WL 3830350, at *4 (E.D.N.Y. June 22, 2015). A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the

principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, *debts owed or due or asserted to be owed or due another*." 15 U.S.C. § 1692a(6) (emphasis added). Specifically excluded from the definition of "debt collectors" are those who "collect[] or attempt[] to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." *Id*. § 1692a(6)(F). On the other hand, a creditor is defined under the FDCPA as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." *Id*. § 1692a(4). The Second Circuit has held that creditors seeking to collect their own debts are not "debt collectors" under the Act.[8] *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998); *see also Wang v. Verizon Commc'ns Inc.*, No. 22-128, 2023 WL 309607, at *2 (2d Cir. Jan. 19, 2023) (summary order) (affirming that plaintiff failed to plead FDCPA claims because the "complaint alleges that the relevant defendants in this action are or were creditors seeking to collect debts owed to them; therefore, they are not 'debt collectors' within the meaning of the statute"); *Herrera v. Navient Corp.*, 2021 WL 2815456, at *3 (E.D.N.Y. May 21, 2021).

Santander contends that although the caption of the Amended Complaint refers to the FDCPA, the Amended Complaint fails to assert an FDCPA claim. (*See* Mot. at 2 n.1.) The Court disagrees and finds that the Amended Complaint does assert an FDCPA claim despite its failure

---

[8] There is an exception if the creditor "in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). As there are no allegations in the Amended Complaint alleging that Santander used any other name in collecting its debts, this exception is inapplicable here.

to enumerate such claim as a separate cause of action. *See Quinones v. City of Binghamton*, 997 F.3d 461, 469 (2d Cir. 2021) (rejecting the argument that a district court may limit a pro se complaint when the plaintiff "fail[s] to enumerate [the claim] as a separate cause of action"). Nonetheless, as discussed below, the allegations of the Amended Complaint fail to plead a *plausible* FDCPA claim because, among other deficiencies, it does not allege facts that would permit the Court to conclude that Santander is a "debt collector" within the meaning of the statute. *Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 530 (S.D.N.Y. 2008) (dismissing FDCPA claim where plaintiff did not allege that defendants were "debt collectors"); *Doherty v. Citibank (S. Dakota) N.A.*, 375 F. Supp. 2d 158, 162 (E.D.N.Y. 2005) (same). Based on these allegations, it is not plausible that Santander was a "debt collector."

The Amended Complaint clearly alleges that the debt collection at issue is derived from the Loan Whyte-Bey received from Santander when he purchased the Vehicle from Mitsubishi.[9] (*See generally* Am. Compl.) Certain Santander notices contain the pro forma disclosure that "SANTANDER CONSUMER USA IS A DEBT COLLECTOR, THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." (*See* ECF No. 18-1 at 108, 113.) However, the Amended Complaint does not plausibly allege that Santander is a debt collector as defined by the FDCPA with respect to the Loan for the foregoing reasons.

First, the documents Whyte-Bey appends to his Amended Complaint demonstrate that Santander was attempting to collect on *its own debt*, not on a debt "owed or due or asserted to be

---

[9] Although Mitsubishi assigned its interest in the Loan to Santander, this assignment was not done "solely for the purpose of facilitating collection of such debt for another" because the assignment occurred at the time of the contract signing and not upon default. Accordingly, the assignment does not render Santander a plausible "debtor" under the FDCPA.

owed or due *another*" as required under the FDCPA's definition of "debt collector." 15 U.S.C. § 1692a(6); *see* ECF No. 18-1 at 107–08, 112–13. Mitsubishi assigned its interest in the Loan to Santander at the time of contract signing. (*See* Contract at 8 (indicating that "SOUTH SHORE MITSUBISHI," as Seller, "assigns its interest in this contract to: SANTANDER CONSUMER USA INC.," and that such assignment is "without recourse").) The Vehicle Registration Form lists Santander as the sole lienholder on Whyte-Bey's vehicle. (*See* ECF No. 18-1 at 20.) All of Whyte-Bey's notices and letters are addressed and sent to Santander, not Mitsubishi. (*See, e.g.*, *id*. at 30, 41, 64, 77, 80, 85, 91, 98, 102.) All of the paperwork mailed to Whyte-Bey is placed on Santander letterhead and contains no reference to Mitsubishi. (*See, e.g.*, *id*. at 82, 107, 112.)

Second, the Supreme Court has affirmed decisions of lower courts ruling that Santander—in its purchase of car loans—was not a "debt collector" because "it didn't regularly seek to collect debts 'owed . . . another' but sought instead only to collect debts that it purchased and owned." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 82 (2017). Central to the Supreme Court's analysis was that "under the definition at issue before us you have to attempt to collect debts owed *another* before you can ever qualify as a debt collector." *Id*. at 87 (emphasis in original); *see also id*. ("So a company collecting purchased defaulted debt for its own account—like Santander—would hardly seem to be barred from qualifying as a creditor under the statute's plain terms.").[10] Here, as discussed above, Santander was attempting to collect debts

---

[10] Notably, in *Henson*, the Supreme Court found that Santander was not a debt collector even though in the case before it, Santander had purchased the loans *after* default and therefore did not even fall under the list of exclusions enumerated in 15 U.S.C. § 1692a(6)(F). Here, by contrast, Santander had purchased the loans *before* default, which the Supreme Court noted would have taken it even further out of the ambit of a "debt collector." *Henson,* 582 U.S. at 87 ("[T]he statute surely excludes from the debt collector definition certain persons who acquire a debt before default.").

owed to itself, rather than on any other entity's behalf. Therefore, Santander is not a "debt collector" for purposes of the FDCPA.

Additionally, even if Santander *was* collecting the loan on Mitsubishi's behalf—a conclusion unsupported by the Amended Complaint and its attached documents and one that Whyte-Bey doesn't advance—Santander obtained the debt *prior* to Whyte-Bey's default, and thus Santander is not a debt collector under 15 U.S.C. § 1692a(6)(F)(iii). Santander, therefore, does not fall under the definition of "debt collector" pursuant to the FDCPA.

Thus, accepting all factual allegations in the Amended Complaint as true, and drawing all reasonable inferences in Whyte-Bey's favor, *see Comme des Garcons, Ltd.*, 84 F.4th at 113, the Amended Complaint fails to plausibly allege that Santander is a "debt collector" as required to plead a plausible FDCPA claim. *See Schuh v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d 454, 462–63 (S.D.N.Y. 2009) (granting motion to dismiss where defendant was not a debt collector under the FDCPA); *Doherty*, 375 F. Supp. 2d at 162 (same); *Williams*, 565 F. Supp. 2d at 530 (same with respect to the FDCPA claim). Accordingly, the FDCPA claim is dismissed.

IV.     **Truth in Lending Act and Fair Credit Billing Act Claims**

Congress enacted the Truth in Lending Act "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . . ." 15 U.S.C. § 1601(a). "The TILA promotes this goal largely by 'imposing mandatory disclosure requirements on those who extend credit to consumers in the American market.'" *Strubel v. Comenity Bank*, 842 F.3d 181, 186 (2d Cir. 2016) (quoting *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 363 (1973)). By ensuring the "meaningful disclosure of credit terms," the TILA "protect[s] the consumer against inaccurate and unfair credit billing and credit card practices." *Poulin v. Balise Auto Sales, Inc.*,

17

647 F.3d 36, 39 (2d Cir. 2011) (citing 15 U.S.C. § 1601(a)). To this end, the TILA, 15 U.S.C. § 1638(a) ("Section 1638(a)"), and its implementing Regulation Z require that a creditor in a consumer transaction disclose "clearly and conspicuously in writing," *inter alia*, the identity of the creditor, the amount financed, the finance charge, and the annual percentage rate clearly and conspicuously in writing. *See* 15 U.S.C. § 1638(a); Regulation Z, 12 C.F.R. § 1026.17(a). The TILA provides borrowers a private right of action against creditors that fail to make the statutorily required disclosures. *See* 15 U.S.C. § 1640. As it did with respect to Whyte-Bey's FDCPA claim, Santander argues that the allegations in the Amended Complaint fail to plead a TILA violation as a separate cause of action. (*See* Mot. at 2 n.1.) As discussed *supra*, however, the Court will not limit the pro se Amended Complaint in this manner.

Construed liberally, the Amended Complaint appears to assert claims that Santander violated the TILA and the FCBA, § 1666 *et seq.*[11] (Am. Compl. ¶¶ 47–54.) Specifically, it alleges that Santander "fail[ed] to disclose the pertinent finance charge information" and that the "finance charges constituted a billing error under § 1666(b)(2) . . . [for which Whyte-Bey] request[ed] additional clarification[,] including documentary evidence." (*Id.* ¶¶ 51–52.)

Contrary to the allegation that "[Santander] fail[ed] to disclose the pertinent finance charge information," (*Id.* ¶ 52), the Contract attached to the Amended Complaint discloses, clearly and conspicuously in writing the finance charge, annual percentage rate, loan amount, and schedule of payments as required by Section 1638(a). (*See* Contract at 1 (identifying "ANNUAL PERCENTAGE RATE" as 19.51%, "FINANCE CHARGE" as $16,947.21,

---

[11] The Court notes that the TILA and the FCBA's one-year statute of limitations do not bar Whyte-Bey's claims here, which were timely filed: Whyte-Bey entered into the retail installment contract on or around June 17, 2024, and the Complaint was filed on October 9, 2024. *See* 15 U.S.C. § 1640(e).

"Amount Financed" as $23,601.75, "Total of Payments" as $41,548.96, defining these terms, and stating that "Your Payment Schedule Will Be" 72 monthly payments of $563.18 each beginning on August 1, 2024).) Indeed, the terms are disclosed under a bolded heading labeled "FEDERAL TRUTH-IN-LENDING DISCLOSURES" in the center of the page. (*See id.*) Courts have found such disclosures to comply with the TILA, 15 U.S.C. § 1638(a). *See, e.g.*, *Catalano v. MarineMax*, 690 F. Supp. 3d 123, 136 (E.D.N.Y. 2023) (finding disclosures clear and conspicuous where the retail installment contract "in a bolded box beneath the bolded, all capital title 'TRUTH IN LENDING DISCLOSURES' – sets forth the relevant annual percentage rate, finance charge, amount financed, total of payments, and total sales price").

Accordingly, here the Amended Complaint's conclusory assertion of a TILA violation is squarely contradicted by documents attached to the pleading and need not be credited. *See, e.g., Estes*, 2015 WL 3830350, at *6 (explaining that a "conclusory statement that defendant failed to provide [the plaintiff] with sufficient disclosure does not state a plausible claim under the TILA"); *Catalano*, 690 F. Supp. 3d at 136 (dismissing plaintiffs' TILA claim where "[p]laintiffs made no allegation, nor raised any argument in briefing, indicating how these disclosures might be insufficiently clear or conspicuous"); *Hall v. Select Portfolio Servicing Inc.*, No. 24-cv-2210, 2025 WL 1042339, at *6 (S.D.N.Y. Jan. 14, 2025), *report and recommendation adopted*, No. 24-cv-2210, 2025 WL 958542 (S.D.N.Y. Mar. 31, 2025) (dismissing TILA claim because plaintiff "has not pointed to disclosure requirements that Defendants did not adhere to," and because his "conclusory, non-specific statements of harm amount to no more than a 'defendant-unlawfully-harmed me' claim that cannot be maintained under Rule 12(b)(6)."). Therefore, the TILA claim is dismissed as implausible under Rule 12(b)(6).

Next, the Court turns to Whyte-Bey's FCBA claim. The FCBA, 15 U.S.C. §§ 1666-1666j, amended the TILA to protect consumers against unfair credit billing and credit card practices and imposes on creditors "requirements . . . for the correction of billing errors." *Am. Express Co. v. Koerner*, 452 U.S. 233, 234 (1981). A consumer invoking the FCBA must have notified the creditor of billing errors within sixty days of the creditor's transmission of the statement containing the alleged error. 15 U.S.C. § 1666(a). In turn, a creditor receiving such an inquiry must send a written acknowledgment within thirty days. *Id*. § 1666(a)(3)(A). The creditor has two billing cycles, or a maximum of ninety days after notification, to resolve the dispute. *Id*. § 1666(a)(3)(B).

Notably, the FCBA only applies to "open-end credit," such as a credit card or a revolving charge account that is "primarily for personal, family, or household purposes." 15 U.S.C. § 1602(i); *Abergel v. Santander Bank*, No. 19-cv-6535, 2019 WL 4141668, at *2 (S.D.N.Y. Aug. 30, 2019) (explaining that the FCBA "applies to 'open-end credit'"); *see also Evans v. Select Portfolio Servicing, Inc.*, No. 18-cv-5985, 2020 WL 5848619, at *11 n.10 (E.D.N.Y. Sept. 30, 2020) ("[A]n open-end credit transaction is one in which the creditor reasonably contemplates repeated transactions, and provides for a finance charge which may be computed from time to time on the outstanding unpaid balance, such as a credit card."). The FCBA "does not cover closed-ended credit transactions" such as the vehicle loan at issue in this action. *See Navient Corp.*, 2021 WL 2815456, at *4; *Green v. Nissan of Manhattan, Inc.*, No. 12-cv-4389, 2013 WL 2444630, at *4 (E.D.N.Y. June 4, 2013) (recognizing that "a credit agreement to purchase a vehicle" is "a closed-end credit transaction"); *Evans*, 2020 WL 5848619, at *11 n.10 ("A closed-end credit transaction is one where the finance charge is divided into the term of the loan and incorporated into time payments, and includes a completed loan such as a mortgage or car

20

loan."). Accordingly, the FCBA is inapplicable to Whyte-Bey's Loan, and therefore the FCBA claim is dismissed under Rule 12(b)(6).

## V.    Slander of Title

The Amended Complaint includes a claim for slander of title under New York state law and alleges that Santander "falsely report[ed] plaintiff to various credit reporting agencies . . . through its deliberate indifference to the effect of such policy and practices upon the consumer protection rights of the plaintiff." (Am. Compl. ¶¶ 98, 100.) This slander of title claim is preempted by the FCRA.

Under the FCRA, "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). In interpreting this provision, the Second Circuit has held that where a plaintiff's "allegations of false reporting concern conduct regulated by § 1681s-2 . . . § 1681t(b)(1)(F) bars [the plaintiff's] state law tort claims." *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 46–47 (2d Cir. 2011) (per curiam) (affirming dismissal of plaintiff s credit-related claims for defamation and intentional infliction of emotional distress against defendant because the FCRA "preempts [these] state law claims"), *cert. denied*, No. 11-1162, 2012 WL 993692 (Apr. 30, 2012); *see e.g., Jones v. Grisanti*, No. 22-cv-145, 2024 WL 3415361, at *12 (W.D.N.Y. July 15, 2024) (finding claim that the defendants slandered or defamed plaintiff's credit by reporting to credit bureaus that she had defaulted on her loans preempted by the FCRA); *Zucker v. HSBC Bank, USA*, No. 17-cv-2192, 2018 WL 2048880, at *10 (E.D.N.Y. May 2, 2018) (dismissing slander of credit claim as preempted by the FCRA); *Campbell v. Bank of New York Tr. Co. N.A.*, No. 11-cv-1588, 2012 WL 2952852, at *9 (S.D.N.Y.

21

May 8, 2012) ("Plaintiffs are unable to establish Defendants' liability as a matter of law on their common law slander of credit claim [] because the FCRA preempts such state law claims"). Accordingly, Whyte-Bey's slander of title claim is dismissed under Rule 12(b)(6).

## VI.    Declaratory and Injunctive Relief

Whyte-Bey asserts separate causes of action for declaratory relief and injunctive relief. (*See* Am. Compl. ¶¶ 107–19.) However, declaratory judgments and injunctions are remedies, not causes of action. *See In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) ("[A] request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights."); *Nebraskaland, Inc. v. Sunoco, Inc. (R & M)*, No. 10-cv-1091, 2010 WL 5067962, at *5 (E.D.N.Y. Dec. 7, 2010) ("This Court's authority to grant a declaratory judgment derives from the Declaratory Judgment Act, which permits a court to enter declaratory relief only '[i]n a case of actual controversy,' 28 U.S.C. § 2201(a), which has been interpreted as reflecting Article III's case or controversy requirement . . . ."); *see also Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010) ("Declaratory judgments and injunctions are remedies, not causes of action"). Therefore, a plaintiff must properly plead an underlying cause of action in order to seek declaratory or injunctive relief.

Here, in light of the dismissal of all of the claims pled in the Amended Complaint, no substantive claim remains upon which Whyte-Bey can seek declaratory or injunctive relief. Therefore, the Amended Complaint's causes of action for declaratory and injunctive relief are also dismissed under Rule 12(b)(6) for failure to state a claim.

## VII.   Leave to Amend

While Whyte-Bey has not sought leave to amend his claims, the Court finds that, in any event, leave to amend should be denied. A district court may deny leave to amend when an

"amendment would be futile because the problem with the claim 'is substantive . . . [and] better pleading will not cure it.'" *Reynolds v. City of Mount Vernon*, No. 14-cv-1481, 2015 WL 1514894, at *5 (S.D.N.Y. Apr. 1, 2015) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (alteration in original)).

Rules 15 and 16 of the Federal Rules of Civil Procedure govern a plaintiff's ability to amend the complaint, and "when read together, set forth three standards for amending pleadings that depend on when the amendment is sought." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021). First, Rule 15(a)(1) permits "a plaintiff [to] freely amend her pleadings . . . as of right without court permission" twenty-one days after a complaint is served or twenty-one days after service of a responsive pleading or motion under Rule 12(b), (e), or (f). *Id*. Second, after the time to amend as of right has passed—"either upon expiration of a specified period [of time] in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A)"—a plaintiff seeking to amend a complaint must either request leave from the court or obtain the opposing party's written consent. *Id.*; Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) sets forth a lenient standard under which "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Unless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Adlife Mktg. & Commc'ns Co. v. Best Yet Mkt., Inc.*, No. 17-cv-2978, 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Third, Rule 15(a)(2)'s period of "liberal" amendment ends upon expiration of the date set by the court as the deadline after which no amendment will be permitted. *Sacerdote*, 9 F.4th at 115. At that point, Rule 16 also applies, and a court must balance the "liberal" amendment standard of Rule 15 with Rule 16(b)(4)'s requirement that the plaintiff show "good cause" for an extension of the deadline to

23

amend. Fed. R. Civ. P. 16(b)(4); *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009); *see also Pasternack v. Shrader*, 863 F.3d 162, 174 n.10 (2d Cir. 2017) (plaintiff must satisfy both Rules 15 and 16 to be permitted to amend after the deadline in the scheduling order has passed).

A pro se plaintiff should ordinarily be given the opportunity 'to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009). "Leave to amend, though liberally granted, may properly be denied for . . .'repeated failure to cure deficiencies by amendments previously allowed' . . . [or] 'futility of amendment,'" among other reasons. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).

At this early stage of the action, the Court has not set a deadline after which no amendment will be permitted. Accordingly, leave to amend is analyzed under Rule 15(a)(2), and such leave must be denied only if there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties. *Adlife Mktg.*, 2018 WL 4568801, at *1 (citing *Foman*, 371 U.S. at 182); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015); *Sacerdote*, 9 F.4th at 115.

The Court has carefully considered whether leave to amend is warranted here. Whyte-Bey has already amended the Complaint once and was able to review Santander's motion to dismiss prior to filing the Amended Complaint. Thus, Whyte-Bey already had an opportunity to address the pleading deficiencies in the original Complaint, which Santander identified in its motion to dismiss. That alone is reason to deny leave to amend here. In fact, the Court warned Whyte-Bey in its March 10, 2025 Order that "[i]t is unlikely that Plaintiff shall have a further opportunity to amend." (*See* Elec. Order, Mar. 10, 2025.) Additionally, as set forth above, even a

24

liberal reading of the Amended Complaint does not give any indication that any valid claim might be stated. Accordingly, leave to amend the Amended Complaint is denied under Rule 15(a)(2).

**CONCLUSION**

For the reasons set forth above, Santander's Motion to Dismiss the Amended Complaint (ECF No. 21) is granted, and Whyte-Bey's Amended Complaint is dismissed with prejudice under Rule 12(b)(6).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to mail a copy of this Order to Whyte-Bey at his address of record and to note such mailing on the docket.


Dated:  Central Islip, New York
        March 10, 2026


                                        *Nusrat J. Choudhury*
                                        NUSRAT J. CHOUDHURY
                                        United States District Judge

25